UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVIS SPECIALTY CONTRACTING, INC.,
a Michigan corporation,

    Plaintiff/Counter-Defendant,

Case No.: 13-10352
Hon. Patrick J. Duggan

vs

TURNER CONSTRUCTION COMPANY,
a New York corporation,

    Defendant/Counter-Plaintiff.

_____

## COUNTER COMPLAINT

Turner Construction Company, by its attorneys Dickinson Wright PLLC, states in its Counter Complaint against Plaintiff/Counter-Defendant, Davis Specialty Contracting, Inc. as follows:

### PARTIES, JURISDICTION, VENUE

1. Defendant/Counter Plaintiff, Turner Construction Company ("Turner") is a New York corporation and maintains its principal place of business in New York, New York.

2. Plaintiff/Counter Defendant, Davis Specialty Contracting, Inc. ("Davis"), is a Michigan corporation and maintains its principal place of business in Milford, Michigan.

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(a)(1).

4. Venue is proper pursuant to 28 U.S.C. §1391(a).

### GENERAL ALLEGATIONS

5. On or about April 30, 2010, Turner entered into a contract with the Regents of the University of Michigan for new construction of the Player Development Center for Intercollegiate Basketball, UM Project Number P00002505 (the "Project").

6. The Project consisted of approximately 57,000 square feet, which included offices, exercise/training facilities, locker rooms and multiple basketball courts for the University's men's and women's basketball teams.

7. On or about May 5, 2010, Davis entered into a subcontract agreement with Turner (the "Subcontract") to provide all material, labor and equipment required to complete the Earth Retention/Micropile and Stabilization Grouting Work to maintain the structural integrity of the existing Crisler Arena and surrounding excavations (the "Work"). A copy of the Subcontract is attached to Plaintiff/Counter Defendant's Complaint.

8. Turner scheduled Davis to start its work on or about May 24, 2010, immediately after the earthwork subcontractor completed its demolition and excavation work.

9. The earthwork subcontractor completed its work as scheduled, however; Davis did not start work until June 9, 2010.

10. From the start of the Project, Davis experienced performance and quality problems, delays and other schedule impacts including, but not limited to, the following:

(a) Late submittals in attempt to redesign the Project's soil retention system instead of following the Owner's design and performance requirements;

(b) Davis' equipment was old and not well maintained, which resulted in continuous equipment breakdowns and schedule delays;

(c) Davis experienced several equipment operator errors, including damage to the existing Crisler Arena by its crane operator, and the lull was overturned by the lull operator;

(d) Davis' employees were not properly trained and/or capable of correctly performing Davis' scope of Work;

(e) Incorrect and inaccurate installation of soil tie backs; and

2

(f) Davis attempted to use equipment not suited to perform the required Work, which resulted in deficiencies and delays.

11. Due to the numerous problems experienced on the Project, Schnabel Foundation Company ("Schnabel") was hired by Davis in September 2010 to assist with the performance of the Work.

12. On November 5, 2010, Turner notified Davis in writing it was in default of the Subcontract due to its failure to correct defective Work, the failure to complete its scope of Work timely, and the failure to make union fringe benefits payments as far back as June 2010. (Exhibit A.)

13. Despite having notice of the numerous defaults, Davis failed to respond to the November 5, 2010 notice letter or correct any of the deficiencies contained therein.

14. On November 19, 2010, Turner provided written notice terminating Davis' Subcontract due to the failure to cure its defaults of the Subcontract. (Exhibit B.)

15. Davis failed to respond to Turner or otherwise object to the termination.

16. Upon the default and termination of Davis, Turner hired Schnabel to complete Davis' scope of work and correct Davis' deficient work.

17. To the extent required by the Subcontract, Turner properly performed all of its obligations under the contract.

18. Davis failed to perform its obligations pursuant to the Subcontract.

19. Turner incurred monetary damages in excess of $2.5 million as a result of Davis' multiple delays, defaults and deficiencies on the Project.

## COUNT I – BREACH OF CONTRACT

20. Turner restates and incorporates its allegations in paragraphs 1 through 19 of the Counter Complaint as if fully set forth herein.

21. On May 5, 2010, Turner and Davis entered into the Subcontract to complete the Earth Retention/Micropile and Stabilization Grouting Work required to maintain the structural integrity of Crisler Arena and surrounding excavations.

22. Turner performed all of its obligations required under the Subcontract.

23. Davis materially breached the Subcontract including, but not limited to, the following:

(a) Late mobilization to the Project;

(b) Late submittals;

(c) Inadequate manpower to perform the Work required;

(d) Multiple equipment failures causing delays to the Project and other subcontractors;

(e) Performance of defective, unsound, improper and nonconforming Work in multiple locations;

(f) Non-payment of its suppliers, laborers, or materialmen; and

(g) Failure to complete Work per the schedule.

24. As a direct and proximate result of Davis' material breaches of the Subcontract, Turner incurred damages due to extensive rescheduling of Work, acceleration costs, winter conditions and the payment of schedule impact claims to multiple subcontractors affected by Davis' Work.

WHEREFORE, Turner Construction Company respectfully requests this Court to enter judgment in its favor and against Davis Specialty Contracting, Inc. in an amount in excess of

4

$75,000.000 to fully compensate Turner Construction Company for its damages, plus other and further relief this Court deems just and equitable, including interest, attorney fees, costs and expenses.

## **COUNT II – INDEMNIFICATION**

25. Turner restates and incorporates its allegations in paragraphs 1 through 24 of the Counter Complaint as if fully set forth herein.

26. On May 5, 2010, Davis and Turner entered into the Subcontract.

27. Davis breached the Subcontract and the terms imposed upon it including, but not limited to:

(a) Late mobilization to the Project;

(b) Late submittals;

(c) Inadequate manpower to perform the Work required;

(d) Multiple equipment failures causing delays to the Project and other subcontractors;

(e) Performance of defective, unsound, improper and nonconforming Work in multiple locations;

(f) Non-payment of its suppliers, laborers, or materialmen; and

(g) Failure to complete Work per the schedule.

28. As a direct and proximate result of Davis' multiple breaches of the Subcontract, Turner was required to hire a replacement contractor to complete the Work.

29. Pursuant to Articles X and XI of the Subcontract, Davis agreed to indemnify and hold harmless Turner for reimbursement of all costs incurred in excess of the Subcontract balance to correct the defective Work and complete Davis's scope of Work, including legal fees.

30. As a direct and proximate result of Davis' defective Work, the failure to complete its scope of Work, and delays due to the inability to perform its Work timely, Turner received numerous impact claims by subcontractors for extras relating to acceleration costs, winter conditions, schedule impacts and delays.

31. Pursuant to Article XI of the Subcontract, Davis agreed to indemnify and hold harmless Turner for reimbursement of all costs incurred in resolving impact claims by subcontractors for extras relating to acceleration costs, winter conditions, schedule impacts and delays caused by Davis.

WHEREFORE, Turner Construction Company respectfully requests this Court to enter judgment in its favor and against Davis Specialty Contracting, Inc. in an amount in excess of $75,000.000 to fully compensate Turner Construction Company for its damages, plus other and further relief this Court deems just and equitable, including interest, attorney fees, costs and expenses.

                              DICKINSON WRIGHT PLLC

                              By: /s/Christopher A. Cornwall
                              Christopher A. Cornwall (P42721)
                              Attorneys for Defendant
                              500 Woodward Avenue, Suite 4000
                              Detroit, MI  48226
                              (313) 223-3500
Dated:  March 22, 2013           ccornwall@dickinsonwright.com

**CERTIFICATE OF SERVICE**

I hereby certify that on March 22, 2013, I electronically filed the foregoing paper with the Clerk of the Court with the Eastern District of Michigan using the ECF system; which will send notification to all counsel of record by CM/ECF.

/s/ Christopher A. Cornwall
DICKINSON WRIGHT PLLC
500 Woodward Avenue, Suite 4000
Detroit, Michigan 48226
(313) 223-3500
ccornwall@dickinsonwright.com

DETROIT 21925-115 1275688v1