**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DAVIS SPECIALTY CONTRACTING, INC.,
a Michigan corporation,

      Plaintiff / Counter-Defendant,      Case No.: 13-10352
                                                         Hon. Matthew F. Leitman
vs.

TURNER CONSTRUCTION COMPANY,
a New York corporation,

      Defendant / Counter-Plaintiff.

---

| **KOTZ SANGSTER WYSOCKI P.C.** | **DICKINSON WRIGHT PLLC** |
|---|---|
| R. Edward Boucher (P57251) | Christopher A. Cornwall (P42721) |
| Attorneys for Davis Specialty Contracting | Attorneys for Turner Construction |
| 400 Renaissance Center, Suite 3400 | 500 Woodward Avenue, Suite 4000 |
| Detroit, Michigan 48243 | Detroit, Michigan 48226 |
| (313) 259-8300 | (313) 223-3500 |
| rboucher@kotzsangster.com | ccornwall@dickinsonwright.com |

## **TABLE OF CONTENTS**

Introduction ................................................................................................................ 1

Analysis ..................................................................................................................... 1

KOTZ, SANGSTER, WYSOCKI AND BERG, P.C.  ATTORNEYS AND COUNSELORS AT LAW, 400 RENAISSANCE CENTER, SUITE 3400, DETROIT, MICHIGAN 48243-

## **TABLE OF AUTHORITIES**

**Cases**

*Corl v Huron Casings, Inc.*, 450 Mich 620, 625; 544 NW2d 278 (1996).......................... 1

*In re Dow Corning Corp*, Case No. 95-20512, 2010 WL 3927738 ................................... 3

Kotz, Sangster, Wysocki and Berg, P.C.  Attorneys and Counselors at Law, 400 Renaissance Center, Suite 3400, Detroit, Michigan 48243-

## DAVIS SPECIALTY CONTRACTING'S SUPPLEMENTAL BRIEF

### INTRODUCTION

The Court should never reach the collateral source rule question under the facts of this case. Davis Specialty Contracting established what it set out to prove at trial, which moots the question posed by the Court as a result of *Corl v Huron Casings, Inc.*, 450 Mich 620, 625; 544 NW2d 278 (1996). But even if the Court rules against Davis, the collateral source question should still not arise. The payment to Turner is defeasible and is subject to Zurich's right of subrogation.[1] The payment is therefore not a "collateral source" because it is not supplemental or additional compensation for breach. Turner will have but one recovery. The Subguard insurance payment is still relevant to the outcome of this case, however. While it does not pertain to the issue of damages, it does pertain to Turner's liability for wrongful termination of Davis because it answers many questions about Turner's curious decisions during the project.

### ANALYSIS

The collateral source rule is a concept of tort law that provides "the recovery of damages from a *tortfeasor* is not reduced by the plaintiff's receipt of money in compensation for his injuries from other sources." *Corl at* 625

---

[1] Davis does not waive any defenses it has or may have to contest a subrogation action that might be brought against it in the future. For purposes of this brief only, Davis will assume, *arguendo*, that Turner and Zurich meet the equitable prerequisites for application of the doctrine.

KOTZ, SANGSTER, WYSOCKI AND BERG, P.C. ATTORNEYS AND COUNSELORS AT LAW, 400 RENAISSANCE CENTER, SUITE 3400, DETROIT, MICHIGAN 48243-

(*emphasis in original*). It is an exception to the general rule of damages preventing a double recovery by an injured party. 25 CJS Damages §189. "The primary policy reason for the application of the collateral source rule is tort deterrence":

> and the rule reflects the beliefs that the tortfeasor should not profit from the victim's prudence in obtaining insurance, and that by reducing the amount the tortfeasor would have to pay, the deterrent effect of the law would be hampered.
> 25 CJS Damages §190

Despite the deterring effect this rule may have on tortfeasors, many states have abrogated some or all of the doctrine as part of tort reform legislation because it over-compensates plaintiffs. Michigan is one such state. Under Michigan's statute, a personal injury plaintiff's judgment may be reduced by the medical or wage loss benefits paid by a collateral source. MCL 600.6303(1). However, the Michigan statute does not consider benefits that give rise to a lien on the plaintiff's recovery to be a collateral source. The pertinent part of the statute states:

> Collateral source does not include life insurance benefits or benefits paid by a person, partnership, association, corporation, or other legal entity entitled by law to a lien against the proceeds of a recovery by a plaintiff in a civil action for damages.
> MCL 600.6303(4)

2

By enacting this provision, the Michigan legislature recognized the right and reality of an insurer's subrogation claim, which prevents a plaintiff from recovering twice for an injury by subordinating the plaintiff's interest in the judgment to the insurer's right of reimbursement.

Published judicial decisions discussing collateral source payments in commercial litigation are few and far between. But as the Court knows, the Michigan Supreme Court held the collateral source rule does not apply in such cases. *Corl, supra*. The court's rationale for this holding was the very purpose of contract law. The court wrote, unlike tort law, "the goal in contract law is not to punish the breaching party but to make the non-breaching party whole." *Corl at* 625-626. Therefore, the double recovery allowed by the collateral source rule is forbidden in Michigan contract law cases. But the collateral source payments in *Corl* were unemployment compensation benefits, and the court did not have the opportunity to consider the rule's application when the plaintiff must reimburse the collateral payor or must acknowledge the payor's equitable or express lien on any recovery.

The Eastern District of Michigan had the occasion to apply *Corl* in a contract law case in *In re Dow Corning Corp*, Case No. 95-20512, 2010 WL 3927738. (Exhibit 1.) There, Judge Hood denied an insurance consortium's motion to preclude Dow Corning's "reinsurance set-off defense," holding re-

insurance payments received by the consortium would be taken into account when calculating the amount due to it. It does not appear from the opinion, however, that the re-insurer had the right to pursue Dow Corning on a subrogation claim. Judge Hood wrote, "The matter at issue, as argued by the London Market Insurers, is a contract action with no claim to subrogation rights."

In our case, Davis acknowledges that Turner must "immediately return the interim payment" to Zurich "upon a final adjudication by a legally binding authority that the Loss is not a Qualifying Loss." (Subguard Contract, Article VII, p. 4, Exhibit 131.) Turner must also reimburse Zurich for any amounts recovered from Davis that exceed the deductible. (*Id.* at Article VIII, p. 5.) And Turner must preserve Zurich's rights of subrogation. (*Id.* at Article VIII, p. 4.) These factors sufficiently distinguish the pre-litigation payments Turner received from Zurich from the unemployment compensation benefits at issue in *Corl*. These factors also parallel the policy expressed by the Michigan Legislature in MCL 600.6303(4), when it excluded payments subject to a lien from the definition of collateral source. This Court may therefore conclude the Subguard insurance payments are not collateral source payments that require a reduction in the amount of any judgment awarded to Turner, in the event the Court decides in Turner's favor. However, *Corl* limits Turner to one recovery,

4

a recovery that Turner has already obtained through Subguard. Any right to collect upon the judgment will depend on Zurich's rights of subrogation.

Of course, this case has always been about Turner's Subguard insurance claim. As Jeff Roth said from the witness stand in response to the Court's question about it, "I'm almost certain that's why we are sitting here, that the claim was filed."

Consider what emerged at trial: late demolition got the project off to a slow start, a delay which was compounded by underground obstructions in the southern portion of 9-Line and design uncertainties in the North Wall. The record contains no complaints about Davis's pace of work during this time. Then, in late August, while Davis struggled with more underground obstructions in the North Wall work, the University informed Turner it would not grant a time extension for the obstructions. Turner did an about-face. On August 25, 2010, Turner voiced its first complaint about Davis's pace of work and filed a "Potential Subcontractor Default" notice with Subguard soon thereafter, on October 18, 2010. (Exhibit 114.) Notwithstanding this, Turner did not terminate Davis until November 19, 2010 (when Davis was substantially complete with its work), despite Davis's allegedly plodding pace on what is supposedly the project schedule's critical path – all while Turner had a replacement contractor (Schnabel) present on site. As Mr. Roth testified, "I

5

mean, why wasn't he terminated in September or October? Why wait until November?" (Roth, Vol. 3, page 62, lines 8-9.) Indeed, why wait while critical path delays continue? If Schnabel was so superior, why relegate it to non-critical tasks? And why could Turner wait until January to repair the 9-Line tiebacks if they were truly critical path work? Finally, why was there no reconciliation between Davis and Turner at the end of the project? Turner's use of Davis for its Subguard claim provides the answer to these questions.

**WHEREFORE** Davis Specialty Contractors, Inc. requests a judgment in its favor against Turner Construction Company in the amount of $403,517.00, plus interest and costs.

Respectfully submitted

**KOTZ SANGSTER WYSOCKI P.C.**

/s/ R. Edward Boucher
R. Edward Boucher (P57251)
400 Renaissance Center, Suite 3400
Detroit, Michigan 48243-1618
(313) 259-8300 - Telephone
rboucher@kotzsangster.com

Date: January 8, 2016

**PROOF OF SERVICE**

I, the undersigned, hereby certify that on this 8th day of January 2016, electronically filed a copy of Davis Specialty Contracting, Inc.'s Supplemental Brief and this Proof of Service with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Christopher A. Cornwall (P42721)
Attorneys for Turner Construction
500 Woodward Avenue, Suite 4000
Detroit, Michigan 48226
(313) 223-3500
ccornwall@dickinsonwright.com

s/ Carrie E. Bechill
Carrie E. Bechill

Kotz Sangster Wysocki P.C. Attorneys and Counselors at Law